UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GARY ALLEN RASMUSSEN,

        Plaintiff,                           Case No. 2:16-cv-190

v.                                         HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

        Defendants.
_____/

## OPINION

On January 3, 2013, Plaintiff Gary Allen Rasmussen completed an application for disability and disability insurance benefits. See Transcript of Administrative Hearing (PageID.145-148). Plaintiff alleges that he became disabled on November 9, 2012, due to back, neck, and leg pain limiting his ability to engage in employment. Plaintiff's application was denied initially and Plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ). (PageID.102, 105-111). ALJ Patrick H. Morrison, held a hearing on April 9, 2015. (PageID.49-91). At the hearing, Plaintiff and Vocational Expert Les Goldsmith testified. In a decision issued on May 6, 2015, the ALJ denied Plaintiff's claims for benefits. (PageID.35-42).

The ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy given Plaintiff's residual functional capacity (RFC) and therefore concluded that Plaintiff was not under a "disability" under the Social Security Act (20 C.F.R. § 404.1520(g)). The ALJ's decision became the agency's final decision when the Appeals Council

denied Plaintiff's request for review. Plaintiff now seeks judicial review of the agency's final decision denying his request for disability benefits[1].

Plaintiff was 56 years old at the time of the hearing. (PageID.57). Plaintiff was five foot eight and one half inches tall and weighed two hundred and ten pounds. (PageID.58). Plaintiff sold life insurance and made about $3,600.00 in the previous year. (PageID.59). Plaintiff drives a vehicle every day. *Id*. Plaintiff completed one year of college and then received vocational training as a financial service representative. (PageID.60). Plaintiff's past work included eight years as financial service representative, two years as a branch office manager, and about one year as multistate marketing director. (PageID.61-64). Plaintiff lifted up to thirty pounds in these positions and would spend time at an office and traveling. (PageID.64). Plaintiff has experience in the financial industry with different employers. (PageID.66).

During the hearing, Plaintiff asserted that he experiences back spasms and back pain while sitting, and almost daily headaches. (PageID.67). At the time of the hearing, Plaintiff described "pretty bad lower back pain." *Id*. Plaintiff suffers from degenerative joint disease and degenerative disc disease in his lumber spine. *Id*. The pain radiates down to the buttocks area, but only about once a week. (PageID.68). Plaintiff began experiencing pain in the late 1970s. *Id*. Plaintiff relieves the pain by taking Norco, Ibuprofen, and Tylenol. *Id*. He also takes Flexeril as a muscle relaxant. *Id*. Plaintiff takes Norco pills when the pain is really bad, and when the Ibuprofen is not working. (PageID.69).

Plaintiff has seen chiropractors, doctors, and physical therapists, works out every day, and performs a stretching and yoga regimen for "maybe 10 or 20 minutes a day as I can do it." *Id*. Plaintiff goes to the YMCA and uses a treadmill, stationary bike, or elliptical machine.

---

[1]Both parties consented to proceed before a Magistrate Judge on November 28, 2016.

*Id*. Plaintiff uses ice and heat regularly. (PageID.71). Plaintiff used to go to a chiropractor, but after May of 2011, he transitioned to physical therapy. *Id*.

Plaintiff has bad knees. The right knee is worse, but does not affect his ability to work. (PageID.72). Plaintiff has arthritis in his neck and experiences pain and headaches. (PageID.73). Plaintiff states that he experiences neck and back pain together. *Id*. Both of Plaintiff's shoulders "pop out of place." *Id*. Plaintiff's main problem is the arthritis from his brain stem to his tailbone. *Id*. Plaintiff experiences muscle cramping and spasms that cause his pain. *Id*. Plaintiff explained that after sitting at a desk for about one half hour he will experience headaches and spasms that become intolerable. (PageID.73-74).

Plaintiff has some difficulties lifting. After he recently lifted his 18 pound dog, he tweaked his back and was done for the day, and he had to sit in a chair for two days while taking Norco pain medication. (PageID.74). He experiences fatigue daily due to sleeping only five hours pernight. (PageID.73-75). As result, Plaintiff rests and takes naps during the day. (PageID.75-76). Plaintiff is able to personally take care of himself. (PageID.76). Plaintiff cooks, vacuums, dusts, makes beds, cleans bathrooms, pays bills, does laundry, takes out the trash, mows the lawn, grocery shops, attends church on occasion, and is the President of the Lions Club. (PageID.77). Plaintiff uses a laptop computer and cell phone, uses email, and Facebook. (PageID.78). During an average day he spends about fourteen hours using his phone for scheduling appointments, and socialization. Plaintiff uses his laptop weekly for work related activity. (PageID.79). Plaintiff can walk for only fifteen or twenty minutes and is less motivated to do so because his dog is too old. *Id*. Plaintiff tries to exercise for a half an hour to one hour a day. (PageID.80). Plaintiff enjoys riding his bike and in the winter cross country skiing. *Id*. Plaintiff's mother lives about a

half hour away and he likes to drive to her house and spend the day with her. *Id*. Plaintiff reads two to four books per month. *Id*.

Plaintiff explained that his problems began in 1967 when he was initially hurt in a bike accident, then he had several ski jumping accidents in the 1970s, but after he was involved in a car accident in 2009, his problems became more severe. (PageID.81). Moreover, when he first started working, he was told that if he worked really hard the first five years, it would get easier, but Plaintiff discovered that was not true, because it is harder to make money today since companies have reduced what they will pay. *Id*.

Vocational Expert Goldsmith testified that Plaintiff's past employment in the financial and insurance industry could be characterized as a light, skilled job, but some of the Plaintiff's past jobs would qualify as sedentary to light, skilled work. (PageID.83). The vocational expert testified that a hypothetical person of Plaintiff's age with similar education and work experience who could not be expected to work on ladders, ropes, scaffolding, or at unprotected heights, limited to occasional stooping, kneeling, crouching, and crawling, could perform Plaintiff's past work. (PageID.84). If that same hypothetical person was limited to only sedentary jobs then positions such as bank manager and marketing director, and some of the sales jobs could be performed, but not the jobs characterized as light duty. (PageID.85). In addition to the limitation of sedentary jobs, if the person could only sit and stand during an eight hour day every half hour or so, the same jobs could be performed. *Id*.

However, if the individual was off task 10 to 15 percent each day due to neck and back pain, that individual would not be able to perform these past relevant jobs and other jobs. (PageID.86). However, an individual with this skillset would have transferable skills which could lead to positions like telemarketing or telephone order taking. *Id*. If such an individual was unable

to go to work on a given day, or had to leave work due to pain in the neck or back at least two to three times per month, that person would not be able to work in competitive employment. (PageID.88).

The ALJ determined that Plaintiff suffers from degenerative joint disease in the low back and bilateral knees, which caused severe limitation in Plaintiff's ability to do basic work activities. (PageID.38). Plaintiff was also found to suffer from non-severe impairments of headaches, bilateral shoulder pain, and neck pain. *Id*. The ALJ concluded that based upon Plaintiff's residual functional capacity, Plaintiff could perform his past relevant work as an insurance sales person, bank manager, or marketing director. (PageID.41-42).

After the Appeals Council denied Plaintiff's appeal, Plaintiff filed this action asserting that the ALJ's decision to deny disability benefits was improper because the Plaintiff's medical condition prohibits him from fully engaging in substantial gainful employment. Plaintiff filed a motion for summary judgment, which will be construed as Plaintiff's initial brief. The Commissioner filed a response arguing that the ALJ's decision is supported by substantial evidence. Plaintiff filed a reply arguing that his disabling back pain would cause him to be off task 10-15 percent of the time, eliminating his ability to engage in competitive employment as testified by the vocational expert.

[R]eview of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant

evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 9, 2012. (PageID.38). At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease in the low back and bilateral knees. *Id.* The ALJ found that Plaintiff's complaints of headaches, bilateral shoulder pain, and neck pain were not supported by objective evidence which showed functional limitations. *Id.* At step three, the ALJ determined that Plaintiff's impairments or a combination of impairments did not meet or

6

medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. (PageID.39). At step four, the ALJ determined that Plaintiff has the residual functional capacity to perform light work, as defined in 20 C.F.R. § 416.967(b), with additional limitations: no work on ladders, ropes, and scaffolding, or at unprotected heights, and no more than occasional stooping, kneeling, crouching, and crawling. At step five, the ALJ concluded that Plaintiff could perform past relevant work as an insurance sales person, bank manager, and a marketing director.

Plaintiff contends that the ALJ committed reversible error by failing to conclude that substantial evidence supported his claim for disability benefits. Plaintiff asserts that his longstanding chiropractic treatment supports his claim of cervical impairment, and that the ALJ erred by exaggerating Plaintiff's ability to engage in daily activities which could support a conclusion that Plaintiff could perform his past relevant work. Further, Plaintiff argues that the ALJ erred in failing to consider that, despite Plaintiff's good days, his back pain could cause him to have disabling pain lasting for days that would require him to be off task and unable to work in competitive employment.

The ALJ concluded that there was no objective evidence to support Plaintiff's claim of a significant cervical spine impairment. The ALJ explained:

> The claimant has complained of neck and shoulder pain that he attributes to a 2009 motor vehicle accident in which he hit his head. He has undergone chiropractic care to address pain. However, there is no diagnostic evidence establishing a cervical spine impairment or a shoulder joint impairment. He testified of years of daily neck pain, scraping, and locking up. Secondary to neck pain he testified of daily headaches. He testified his shoulders are weak and pop out of place on a regular basis. He indicated he primarily takes ibuprofen and Tylenol for pain. However, when the pain becomes unbearable he will take narcotic medication. Despite, his complaints, the longitudinal evidence indicates the claimant remained active. In January 2012, he reported he was yet able to

7

walk, hike, bike, and ski. In addition in January 2012, he reported engaging in a "a lot of snow removal." In January 2013, he reported his neck and bilateral shoulder pain is relieved with rest, ice, and analgesic ointments. At the disability hearing he admitted ongoing substantial daily activities including cooking, cleaning, shopping, driving, mowing the lawn, uses a laptop, and spends approximately 15 hours a day on his smartphone arranging activities and checking his e-mail. The claimant's daily activities reflect significant use of the cervical spine and the bilateral upper extremities.

(PageID.39) (citations omitted). Plaintiff argues that the ALJ erred in not considering his chiropractic treatment as evidence of a severe cervical impairment. The ALJ found that no objective medical evidence supported Plaintiff's claim of a severe cervical impairment and that his substantial daily activities established that he was not severely limited by his alleged cervical impairment. Plaintiff sought chiropractic treatment, but his last chiropractic visit was more than one year before his alleged onset date of November 9, 2012. (PageID.337-401).

The ALJ explained that Plaintiff's treatment remained routine and conservative and, most importantly, Plaintiff was not significantly limited in his daily activities. The ALJ stated:

> In terms of the claimant's alleged disabling symptoms, the claimant's longitudinal course of treatment has remained routine and conservative, which is inconsistent with a finding of a disability. According to the evidence, the claimant has a longstanding history of back and knee complaints secondary to a 1974 skiing accident and a 2009 motor vehicle accident. Right knee x-rays in 2009 revealed only mild osteoarthritic changes, chondrocalcinosis. The claimant's earning record reflects a solid work history, above the substantial gainful activity level that indicates the claimant has worked with the conditions.
>
> In May 2011, the claimant complained of an exacerbation of low back pain. Upon physical examination he demonstrate an unsteady gait, a decreased range of motion, moderate low back muscle spasm, and bilaterally negative straight leg raises. Lumbar spine x-rays showed mild to moderate posterior facet arthropathy at L5-S1 with mild to moderate neural foraminal narrowing. He was treated with chiropractic care that he reported worsened his pain, pain

medications, including narcotics, a muscle relaxant, and underwent physical therapy. During the initial PT assessment on May 16, 2011, the claimant reported lower left side back pain but denied leg pain, numbness, tingling, or weakness. The claimant reported similar symptoms 20 years prior that responded well to PT. In addition, he admitted that Flexeril was effective in pain control . . . but indicated that he recently ran out of the medication. He reported he continued to take anti-inflammatories. Upon examination, he demonstrated tenderness at the L5-S1 and L4-5 interpaces, tenderness over the left PSIS region, generalized muscle tightness throughout the bilateral lumbar paraspinal muscles, limited flexion and extension, bilateral lateral flexion, bilateral hip rotation. He successfully completed a 4-week course of PT and upon discharge his examination revealed a normal gait, no pain with palpitation, full flexion, extension, bilateral lateral flexion, and full bilateral hip external rotation. He was discharged having met all treatment goals and reporting a "resolution of low back pain."

In January 2012 the claimant sought treatment for an exacerbation of back pain secondary to snow removal. He reported he had recently engaged in "a lot of snow removal" which caused an exacerbation of pain. Narcotic pain medication and a muscle relaxant were restarted. There is a gap in treatment until January 4, 2013. He complained of knee pain, stiffness, decreased range of motion, and difficulty weight bearing. He also reported an exacerbation in low back pain. Upon examination, he had decreased flexion, positive lateral McMurrays on the right. However, there was no effusion and the ACL and MCL remained intact. His low mid back was tender but he had a good range of motion. He was diagnosed with a meniscus injury and referred to an orthopedic specialist.

The claimant underwent a consultation with orthopedic surgeon Dr. Matthew Colligan, D.O. on January 29, 2013 and complained of bilateral knee pain greater on the right and back pain. Upon examination, he had pain and tenderness in his knees, no left knee effusion and only trace right knee effusion, bilaterally no valgus/varus instability, no joint line tenderness, significant patellofemoral crepitus with a positive patellar grind test. Bilateral knee x-rays showed significant lateral joint space narrowing in the right knee and significant patella femoral arthrosis in the left knee. He was diagnosed with moderate to severe DJD of the right knee and mild DJD of the left knee and underwent a series of knee injections.
In addition to the objective medical evidence reflecting less than disabling findings, the claimant testified to a wide range of daily

>activities consistent with the light exertional level residual functional capacity set forth herein. He testified that he cooks, cleans his home, pays bills, does the laundry, takes out the trash, mows the lawn, grocery shops, attends church, works out regularly at the YMCA, is the president of the Lions Club, does speaking engagements, and goes out to eat on a monthly basis. He testified that he drives daily and drives from 20-30 times a week, spends 14 hours a day on his cell phone scheduling activities, using the email, and on Facebook and other items, all of which is consistent with the ability to perform work within the residual functional capacity.

(PageID.40-41) (citations omitted).

Plaintiff argues that the ALJ improperly considered his daily activities in denying his claim that he is disabled. When an ALJ evaluates an individual's complaints of pain and disabling symptoms, the ALJ may consider the credibility of the person. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ's determination of a Plaintiff's credibility must be supported by substantial evidence. *Id.*; *Winslow*, 566 Fed. App'x at 422. Simply stating that Plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The ALJ must assess an individual's pain by using a two prong test:

>First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (referencing *Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y Health & Human Servs.,* 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a).

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)). An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms. *Id.* at 532.

The ALJ's assessment of Plaintiff's medical condition was correct. Plaintiff's impairments do not significantly limit his daily activities. Plaintiff argues that the ALJ exaggerated his ability to engage in daily activities and that he could be subjected to disabling pain that prohibits him from engaging in substantial gainful employment and would cause him to be off-task 10-15 percent of the day making him unemployable. Substantial evidence exists to support the ALJ's finding that Plaintiff could perform his past relevant work as an insurance sales person, bank manager, and marketing director. Plaintiff's own statements regarding his daily activities establish that he has a capacity for at least light duty work. Plaintiff participates in a wide variety of activities that support the ALJ's findings. There is substantial evidence in the record that supports the Commissioner's decision that Plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.


Dated:   July 10, 2017                        */s/ Timothy P. Greeley*
                                              TIMOTHY P. GREELEY
                                              UNITED STATES MAGISTRATE JUDGE